24-2708-cr
*United States v. Luizzi*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of October, two thousand twenty-five.

Present:
> GUIDO CALABRESI,
> ROBERT D. SACK,
> EUNICE C. LEE,
> > *Circuit Judges*,

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                No. 24-2708-cr

ANTHONY LUIZZI,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Appellee: | Alexander Wentworth-Ping, Joshua Rothenberg, Assistant United States Attorneys, *for* John A. Sarcone III, United States Attorney for the Northern District of New York, Syracuse, NY. |
| For Defendant-Appellant: | Danielle Neroni Reilly, Esq., Law Office of Danielle Neroni, Albany, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Nardacci, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Anthony Luizzi appeals from a sentence imposed following his guilty plea for (1) conspiring to distribute and possess with intent to distribute fentanyl, methamphetamine, and cocaine, in violation of 21 U.S.C. §§ 846 and 841; (2) possessing fentanyl, methamphetamine, and cocaine with intent to distribute, in violation of 21 U.S.C. § 841; and (3) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The district court sentenced Luizzi to concurrent 150-month terms of imprisonment on the drug counts and a consecutive 60-month term of imprisonment on the gun count, for a total 210-month term of imprisonment, followed by a concurrent 5-year term of supervised release. The court also imposed a $10,000 fine. On appeal, Luizzi argues that the district court erred in (1) enhancing Luizzi's offense level under the Sentencing Guidelines for maintaining a premise for the purpose of distributing a controlled substance, (2) scoring his prior offense for driving while ability impaired ("DWAI") in his criminal history under the Sentencing Guidelines, and (3) imposing a fine on an indigent defendant.

## BACKGROUND

Luizzi pleaded guilty to a conspiracy to sell fake Oxycodone pills containing fentanyl, cocaine, and methamphetamine in Albany and Saratoga counties. Luizzi used his home (the "Twin Lakes apartment") to help store a supply of drugs; he also had access to a supply of drugs at another apartment (the "Western Avenue apartment"). Pursuant to search warrants, agents

2

searched these apartments on the same day and discovered 11,200 grams of pills stamped "M-30," which resembled Oxycodone and contained fentanyl, in the Twin Lakes apartment. Agents also found 1,033 grams of counterfeit Xanax pills, and five guns, as well as $2,616 in cash. In an interview, Luizzi admitted that he intended to traffic the pills found in his apartment and suspected they contained fentanyl. The search of the Western Avenue apartment uncovered 403 grams of fentanyl pills, 7,237 grams of pills containing methamphetamine, 737 grams of cocaine, and 29 guns in a safe. Agents also found five more guns, a digital scale with cocaine residue, and suspected marijuana and suspected heroin in packaging.

As part of his plea agreement, Luizzi affirmed that he understood the maximum penalties were life imprisonment on all counts and fines of $10,000,000 on the drug counts and $250,000 on the gun count. The parties stipulated to a base offense level of 36, and the government agreed that if Luizzi accepted responsibility, he would receive a 3-level downward adjustment, for a total offense level of 33. Luizzi "waive[d] any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or collaterally attack . . . [a]ny sentence to a term of imprisonment of 180 months or less [or] [a]ny sentence to a fine within the maximum permitted by law." App'x at 26–27.

Prior to sentencing, the Pre-Sentence Report ("PSR") applied a 2-level increase to his offense level for maintaining a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12) (the "stash house enhancement"). This resulted in a total offense level of 35. The PSR explained that the increase was warranted because Luizzi resided at the Twin Lakes apartment in which he possessed thousands of fentanyl pills,

3

cash, and firearms, as well as because he maintained access to the Western Avenue apartment. In addition, the PSR listed three adult offenses (petit larceny, resisting arrest, and DWAI[1]) which together counted as four points for a criminal history category of III.

At sentencing, the district court adopted the PSR's stated facts and Guidelines calculation, including its application of the stash house enhancement, to which Luizzi objected, and the inclusion of the DWAI offense in the criminal history. The district court also imposed a fine of $10,000, noting that Luizzi failed to submit financial information establishing an inability to pay. In imposing the 210-month sentence of imprisonment, the district court considered "[Luizzi's] history of substance abuse[] and his youth." App'x at 136. But the court also noted his "demonstrated [] lack of respect for the law and unwillingness to be deterred from criminal conduct," and his "pattern of escalating criminal conduct," including his assault on a corrections officer while detained. App'x at 122.

## STANDARD OF REVIEW

Appellate review of criminal sentences involves both substantive and procedural components and "amounts to review for abuse of discretion." *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). "Procedural error occurs in situations where, for instance, the district court miscalculates the Guidelines; treats them as mandatory; does not adequately explain the sentence imposed; does not properly

---

[1] The PSR explained that the DWAI offense arose from an incident where police saw Luizzi "stumbl[e] down the middle of [a] street," get into a car, and begin driving. PSR ¶ 60. He "was visibly texting on his phone and not wearing his seatbelt." *Id.* When stopped, "Luizzi had bloodshot eyes, droopy eyelids, slurring speech, slow motor functions and smelled of marijuana." *Id.* He also had marijuana on his lap and failed a field sobriety test.

4

consider the § 3553(a) factors; bases its sentence on clearly erroneous facts; or deviates from the Guidelines without explanation." *United States v. McIntosh*, 753 F.3d 388, 394 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).

In reviewing a challenge to the district court's application of the Guidelines, this Court reviews a district court's legal determinations de novo and its factual findings for clear error. *United States v. Esteras*, 102 F.4th 98, 104 (2d Cir. 2024). Clear error requires that this Court has "the definite and firm conviction that a mistake has been committed." *United States v. Osuba*, 67 F.4th 56, 65 (2d Cir. 2023). It is not enough that this Court "had [it] been sitting as the trier of fact . . . would have weighed the evidence differently." *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985)). "[W]hen there are two permissible views of the evidence, the district court's choice between them cannot be deemed clearly erroneous." *Id.* at 66.

"[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks omitted).

**DISCUSSION**

**I.    Application of the Stash House Enhancement**

Luizzi argues that the district court "procedurally erred when it enhanced Appellant's

5

offense level for maintaining a premise for the purpose of distributing a controlled substance," under Guidelines § 2D1.1(b)(12). He argues that the evidence in this case did not support the allegation that one of the primary or principal uses for the Twin Lakes apartment was manufacturing or distributing a controlled substance because "[Luizzi] resided at [the Twin Lakes] apartment with his girlfriend and the principal use for this residence was to live, sleep, and eat." Appellant's Br. at 15. He also argues that the evidence did not support Luizzi maintaining the Western Avenue apartment for drug distribution purposes because "the [g]overnment's evidence proved that it was 'maintained' by [Luizzi's] 'superiors' . . . [and] controlled buys occurred . . . almost exclusively involving a co-defendant." *Id.* at 19.

The district court did not abuse its discretion in applying the stash house enhancement. Luizzi admitted that as part of the conspiracy he "helped store the supply of drugs" at his apartment (the Twin Lakes apartment). App'x at 56–58. The Sentencing Guidelines commentary explains that the stash house enhancement is applicable if a premise is used for "the purpose of . . . distributing a controlled substance, [which] includ[es] storage of a controlled substance for the purpose of distribution." U.S.S.G. §2D1.1 cmt. n.17. In addition, this Court has upheld the application of the stash house enhancement where the defendant "stored substantial quantities of drugs at his home . . . [including] sixty-six grams of fentanyl." *Esteras*, 102 F.4th at 106 (internal quotation marks omitted). Agents here found 11,200 grams of fake pills containing fentanyl and 1,033 grams of suspected fake Xanax pills at the Twin Lakes apartment, significantly more than the amounts at issue in *Esteras*. Because Luizzi clearly maintained the Twin Lakes apartment for the purpose of distributing controlled substances, we need not decide whether Luizzi's conduct

vis-à-vis the Western Avenue apartment also sufficed to trigger the enhancement.

**II.      Scoring of DWAI Offense in Luizzi's Criminal History**

Luizzi argues that his DWAI offense should not have been included in calculating his criminal history score under Guidelines § 4A1.2(c). That section provides for the exclusion of certain offenses in a defendant's criminal history, including, in some circumstances, offenses "similar to" reckless driving.   In Application Note 5 of the § 4A1.2(c) commentary, however, the Sentencing Commission states that convictions for driving while intoxicated and related offenses are always scored.   Luizzi argues that Application Note 5 is inconsistent with the text of the Guidelines and that the DWAI offense should not have been scored because it is analogous to a conviction for reckless driving.

Luizzi's claim is reviewed for plain error because he repeatedly told the district court that he understood that the DWAI violation could be scored, although he urged the court not to score it.   "If a defendant does not raise an objection on . . . procedural grounds at the time of sentencing, [this Court's] review is confined to plain error."   *United States v. Fletcher*, 134 F.4th 708, 711 (2d Cir. 2025).

The Sentencing Guidelines provide that in calculating criminal history, "[s]entences for misdemeanor and petty offenses are counted" with two sets of exceptions.   U.S.S.G. § 4A1.2(c). The first set are a list of enumerated offenses that are only counted if "the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days," or if "the prior offense was similar to an instant offense."   U.S.S.G. § 4A1.2(c)(1).   Included in that set are, among others, careless or reckless driving, driving without a proper license, and leaving the scene

7

of an accident. *Id.* The offenses in the second set are never counted, and it includes, among others, "[m]inor traffic infractions (*e.g.*, speeding)." U.S.S.G. § 4A1.2(c)(2). Application Note 5 provides that "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified." U.S.S.G. § 4A1.2 cmt. n.5.

Citing *United States v. Potes-Castillo*, 638 F.3d 106, 110–11 (2d Cir. 2011), Luizzi argues that his DWAI offense should not be counted, despite Application Note 5, because the note is inconsistent with the language of the Guidelines. In *Potes-Castillo*, this Court found that a DWAI offense should not necessarily be scored under the Guidelines. *See id.* That decision was based on a prior version of Application Note 5 that this Court found ambiguous as to DWAI. *See id.* But Application Note 5 was amended in response to *Potes-Castillo*, and the current version specifies that all offenses for "driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified." U.S.S.G. § 4A1.2 cmt. n.5. The amended version of Application Note 5 thus supports scoring the DWAI offense. And even if Application Note 5 were arguably inconsistent with the text of the Guidelines, as Luizzi now argues, that cannot be said to be "clear or obvious." It was certainly not plain error for the district court to follow the Guidelines commentary.

## III. Imposition of a $10,000 Fine

Luizzi argues that the district court's imposition of a $10,000 fine was "erroneous and must be vacated." Appellant's Br. at 24. However, the appeal waiver contained in his plea agreement, whose validity he does not challenge on appeal, forecloses his challenge. Luizzi

"waive[d] . . . any and all rights . . . to appeal and/or collaterally attack . . . [a]ny sentence to a fine within the maximum permitted by law" in his plea agreement. App'x at 26–27. The district court imposed a $10,000 fine, below the statutory maximum of $10,000,000 on each drug count and $250,000 on the gun count. Because the amount imposed was within the terms of the appeal waiver, Luizzi's arguments regarding the fine are waived. *See United States v. Ojeda*, 946 F.3d 622, 629 (2d Cir. 2020).

IV.     **Substantive Reasonableness**

Lastly, to the extent that Luizzi challenges his sentence based on substantive reasonableness, that challenge fails given the circumstances of the offense conduct and the district court's exercise of discretion in imposing a below-Guidelines sentence.

*             *             *

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9